May it please the Court and Counsel, my name is James Vogel. I represent the Fort Belknap Housing Department as the petitioner in this cause. And I'd like to, today I'd like to focus on, I believe, two issues that have been briefed to the Court. I'd like to provide some clarification. I believe that they're intertwined. The first would be regarding the jurisdiction of this Court to hear this petition, which is an original petition. To review an agency action. And secondly, the merits of the petition, which we believe are substantial in that HUD has sought to recapture certain grant funds dating back well before a period of three years, actually dating back 11 years, where their specific regulatory guidance, we believe, limits them to a simple three-year period of recovery. The amount is substantial. My client is a tribal-designated housing entity under Federal guidelines. They service a very poverty-stricken population. The administration of these funds provides housing resources to the Housing Department and is of great concern to the Council. So the total amount at issue was approximately 2.8 in total. The amount that we conclude is unfairly being sought is approximately 2.2 million. First of all, you'll note from the record that's been provided to the Court that there has been a substantial issue with management at the local level at Fort Belknap in Montana. Throughout the period of time at issue, there have been concerns raised by HUD, and the Council, through its Housing Department, has conceded the issues raised and has allowed funds to be recaptured on three different instances. Well, what you're doing, what management was doing was reporting units which were either eligible to be sold or had been sold as not eligible to be sold nor sold and getting rent subsidies for people that weren't entitled to them. Isn't that the nub of the issue? As colored at this point in time, yes, Your Honor. So all they're saying is we overpaid you based on your incorrect — I won't get into whether the fraudulent, but incorrect reports, and we want our money back, and we'll get it back by withholding a certain sum from you over five years. Now, they're going to keep paying you, but just not as much, right? Correct. That is their — So tell me what's wrong with that. Well, the nub of it is that their own rules that they developed in a process where they consulted with tribes on how far back they should be allowed to go. No, no, no. Those rules have to do when the tribe is not in, quote, substantial compliance, unquote. And there's a specific regulation that overpayment and not reimbursing is not considered to be not substantial compliance. So that three-year statute doesn't apply, because they're not seeking the type of repayment based on your misspending the money. They're claiming it because you're — you've misreceived the money, not because you've misspent it. Well, Your Honor, our position is that those are interrelated, and while they are trying to distinguish them, they cannot be distinguished. One, there are, on an annual basis, every year HUD requires that audits under the Single Audit Act be completed. There were no findings that these monies were misreceived or that there was an improper receipt of these monies. Because they believe your report. Well, Your Honor, they have — they, along with the counsel, had an affirmative duty to — to research it. In the section that we've cited, 319, sub d, it provides that they have an affirmative duty to review and examine whether or not there is a problem with how these monies are spent. No, no, no, how it's spent. But they're not saying how it's spent. They're not saying you took the money and you bought Roy Chandon Champagne. They're not saying that. They're saying you shouldn't have gotten the money. How you spent it, it may have been spent in the best interest of the impoverished Indian tribe, no question about it. But they spent too much. And that specific provision, beyond just examining how it's spent, also looks towards how the units and the inventory is represented, whether or not the inventory that has been listed has been correct. What's the regulation that you say involves both of those? I believe the language is found at the last sentence of section 319, 100319.d. Mr. Vogel, I think you said you're going to address both the jurisdiction and the merits, but I'm not sure, but it seems like you've been addressing the merits as to why the tribe didn't do anything wrong. But what's your response to the government's arguments that our court has no jurisdiction? Well, Your Honor, the NAHASDA itself, under 4161, provides for this court to hear a petition when you have a substantial noncompliance issue cited by HUD, and in turn have them attempting, in this case, to reduce a ---- But HUD hasn't cited, as I think Judge Beyer's questions made clear, HUD hasn't cited the Housing Office for substantial noncompliance, right? Well, Your Honor, we would maintain that whatever they call it, that's exactly what they're doing. They have argued that there's, in their paperwork submitted from 2000 to 2010, that there was, every year, a process of failure to keep this inventory where it should be. If it was a single instance, perhaps the language that they're citing would apply. But if you look at 1000.534 of the CFR, they define what they construe a substantial noncompliance to be. Well, see, this is, to me, almost a simple overpayment case where they're trying to recapture overpayments through the deduction process. Now, the government has pointed out there a number of these cases, a dozen or more, proceeding in the district courts. Now, did you also file in the district court, or did you just skip that? Your Honor, our decision was to file here directly because we felt the issue was relatively simple. You didn't file a standby case in the district court? We have not. You still have time to do that? That is a possibility, Your Honor. What we've seen in our tribal council has limited resources, and what they looked at is every time one of these actions have been filed, whether it's in a court of claims or in the district court, you get arguments of no jurisdiction from HUD's representatives regardless. We have it here also. We believe that their action to state that for all of these years that the reports that were submitted were wrong, that the audits were essentially incorrect, that the plans they approved were incorrect, that if that is what they're saying, if that is true, then that fits 1,534.B, if you will, defining what noncompliance is, in other words, a pattern of concerns, whether it's management or otherwise, that substantially impacts the ability to perform and comply with NAHASDA guidelines. What about the statutory provision for statutory noncompliance? I mean, I'm sitting there looking at it, and it seems, it says that not complying regarding the reporting of low-income dwelling units shall not by itself be considered to be substantial noncompliance. What is that supposed to mean if it doesn't mean what happened here? Well, I guess what I'm suggesting is that you have to read their language together, the section that I've cited. Well, you do, but you start with the we start with the statute. Correct. And the regulation flows from that. And I look at the statute, and it seems to say, well, if the problem is improper reporting, that's not deemed substantial noncompliance. Now, I don't understand why that section was put in, but I'm struggling to figure out what it means, because we're not entitled to disregard statutes. So how do we harmonize that with the position you're taking? Well, it's perhaps a bit extraordinary to me to argue that the failure that they're It talks about a failure, the inference being a single failure. The failure they're talking about, that they've cited us with at Fort Belknap, is 11 years, year after year, audit after audit, plan approval after plan approval, annual report after annual report, expenditure after expenditure. All of these things have been reviewed, both in those reports that documentation is sent every year, as well as in their site visits that they complete that's required in 319D. They have an obligation, too, to do something if they conclude that there's a problem. They, in fact, did. As I started out, there were instances on three occasions during this same time period where they did cite and recover funds. What I'm suggesting is that what's intended by that provision is that a simple failure to report as required perhaps doesn't meet it. But that's not what they're saying happened here. They're saying 11 years of failing to do this on all these occasions raises the requirement to pay these monies back. And we're saying, okay, if that's what you're saying, then that goes – that is substantial noncompliance under 1000.534. Kennedy, are you saying because it happens for a number of years instead of just one year, that's what makes it substantial? Well, in fact – I'm not – I don't think I'm following your argument. Well, in fact – I mean, what's the difference between one year and, you know, 3 years or 5 years or 11 years? I still don't get the difference. I mean, you can see if it's just one year, right, it's not – it's not substantial noncompliance. I can understand that. Okay. Now, why does 5 years or 10 years, 11 years make a difference? In their own provisions under 1000.534 sub B, the noncompliance represents a material pattern or practice of activities constituting willful noncompliance with a particular provision of the Hazardous Regulations, even if a single instance of noncompliance would not be substantial. They're saying that if you look at the numbers that they've totaled, on a yearly basis, you're talking at most several hundred thousand dollars. Now this noncompliance that they're alleging ends up being $2.8 million. It's more than the amount of the grants that they even provide. You mean more than the annual amount? Yes. The – we understand that Congress, in looking at this amendment, they intended to put some limitations on there. At the same time, HUD, when they adopted this 3-year limitation, they intended to put some limitations on how far back they could go. What we're arguing in this petition is that they went through a process in 2001 and 2005 and 2007 on these same issues and recaptured money, and at the end of that process of each one, they said, thank you for your cooperation or thank you for your – for helping resolve this. There was nothing that extended that 3 years of limitation that the CFR provision provides for. We would note that the question that's raised by this in terms of your jurisdiction, it's tied from 4161 to 4152. In 4152, when that was amended in 2008, Congress left the door open that a lawsuit could be provided or could be filed, and the limitations on the rules where inventory had to be reported wouldn't apply on claims that were being made and that the tribe wanted to file litigation on. But as we noted in our briefing, Congress put a small window. They said, you've got 45 days after they adopted that language, and if there indeed was a claim, which HUD in 2010 said there was, Fort Belknap could have filed an action then and not been subject to these limitations.  So in part, we believe that there's, again, a reason for limitations. HUD developed these limitations on the 3 years after consultation with tribes. At some point, the position of the tribe is that these things have to have certainty going forward for planning purposes and otherwise. You can't develop housing, you can't do other things if you don't know what the resources are that are coming in. We believe that there's a – that the rules involved here are not clear. Looking backwards, you could say, okay, that's what was intended. But there's been lengthy litigation involving some tribes in Montana, for instance. The Fort Peck tribes, until February of 2010, they had a decision from the district court in Colorado that said this issue about the inventory was to the tribe's favor. You didn't have this issue of having to pay back. That was reversed in 2010. The first time after that litigation was resolved at the Tenth Circuit, these issues on inventory and the reporting were cleared up at Fort Belknap because of that litigation. If it's allowable, I'd like to reserve the balance of my time. Thank you. Roberts. You may. Leevey. Good morning. May it please the Court. I am Jonathan Leevey with the United States Department of Justice, representing HUD. You might want to lower that microphone so it's closer to where you're speaking. I'm worried about it hitting my binder. I apologize, Your Honor. I'm Jonathan Leevey with the United States Department of Justice, representing HUD in this matter. We certainly agree that there are two issues that we believe are legally distinct from each other, and they are the jurisdiction of this Court, which at the end of the day should be dispositive because this Court lacks jurisdiction. And then the second issue which the Court would reach, only if it finds that it has jurisdiction, is the timeliness of HUD's efforts to recover these funds, which the tribe has now conceded were indeed improperly paid, as the Court's questions earlier indicated. They were improperly paid largely based on the statements that were made to HUD by the tribe itself, which turned out to be incorrect regarding who owned the properties at the time. The jurisdictional question turns largely, well, turns entirely on Section 48 of the 4161d, which in turn references 4161a, which, as the Court has already been discussing, addresses the failure of a recipient, that would be the tribe in this case, to comply with the requirements of the to comply, excuse me, to comply substantially with any provision of NAJASDA. And so one key question here is that's not what the provision says. It says the failure of a recipient to comply with the requirements of a particular section of this title, blah, blah, blah, blah, blah, shall not in itself be considered to be substantial noncompliance. I've struggled. What the heck does that mean, and particularly in itself? I was citing a different provision. I apologize, Your Honor, but let me answer your question. Isn't the provision I cited the one that really takes it out from jurisdiction? Yes. Well, it is the one that most clearly takes it out, absolutely, Your Honor. And there is legislative history on that provision. Oh, there's a slippery pass. Well, Your Honor has to be helpful because I can't figure out what it's doing there. That's right. I think the language is clear in the sense that it does use the language by itself, but the tribe has conceded here that the only issue present in this case is this reporting. And so if you read that language. The only issue is what? The only issue in HUD's recapture is the correct FCAS count and the reporting by the tribe of the correct FCAS count. What about, isn't there some statute of limitations issue? Yes, Your Honor. In this judicial case. But in terms of the question of does section 4161 confer jurisdiction on this court. Okay. It confers jurisdiction to the extent that there is a finding of a failure to comply substantially with any provision of NAHASDA. And the finding by HUD is that the FCAS counts were wrong. And that's the only finding that gives rise to the recapture at issue. And the only duty of the tribe is to comply in expenditure with NAHASDA. The. Speak. That is one of the specific duties that is discussed in section 4161, yes. See, one of the things that gives me pause is the problem isn't simply the miscount, but what happened as a result of the miscount. I mean, if they reported numbers that were too low, for example. Okay. Nothing happens as a result. The problem. So in that sense, it could be argued that the miscount would not by itself be considered non substantial noncompliance. The problem here is that too much money was paid. That money was retained. Audits didn't catch it, so on and so forth. So is this actually something that's contemplated by that subsection 2? Is the problem here limited to regarding the reporting of low income dwelling units in itself? Or is it the implications and the ramifications that flowed from that? Well, it is the reporting in itself in this sense. There is nothing else that anyone, including the tribe here, has pointed to, to say this is the substantial noncompliance that allows us to invoke the Court's jurisdiction. The only thing. The money that shouldn't have been received. Well, making the reports. Well, that's what caused the money to be paid, but. It sort of seems strange to say that an inaction of that nature is separate from the underlying action of the false reporting. I do want to point out the Court to the extent it's struggling with this to the legislative history and what it has to say about this. And this is Senate Report Number 110-238, which is cited in our brief. And there are a couple of important things about this. One is that it shows that Congress knew and understood that HUD was in fact already at this time recovering funds that had been overpaid on exactly this basis. And so the report says that a 2001 HUD Office of Inspector General audit report identified the need for removal of these ineligible units, these are the conveyed units that are at issue here, from the funding formula calculations. In response, the majority of those grant recipients who had included ineligible units in their count have paid or are in the process of paying back these funds. So Congress knew that HUD was undertaking the exact kind of recovery of funds that we're talking about that were based on the misreporting of the number of units. And it enacted this statute saying that the misreporting of units is not substantial noncompliance. And here's what it said specifically about that statement. First of all, it says it's a clarification. Clarification on availability of administrative hearing. Under this amendment, if a grant recipient is required to relinquish overpaid funds due to the inclusion of housing units deemed ineligible under Section 301, the action does not constitute substantial noncompliance by the grantee and does not automatically trigger a formal administrative hearing process. So in the legislative, to the extent there is any lack of clarity in the statute of the type that Your Honor's question suggests, the legislative hearing does not constitute substantial noncompliance. So the legislative history makes this absolutely clear that this statute is meant to apply to precisely the situation here, which is a situation in which a grant recipient is required to relinquish overpaid funds due to the inclusion of housing units deemed ineligible. Kennedy. Now, if there were substantial noncompliance in expenditure of funds. Yes, Your Honor. How would HUD go about recovering that other than withholding from future grants? If there were substantial noncompliance in the expenditure of funds, that is not this case. There's no allegation about that. And if there were such a case, that would appear to come over under 4161. And 4161 spells out several possible remedies, one of which is to reduce the payments to the tribe by the amount, and I should use the exact language here, reduce payments under this chapter, meaning Nahasda, to the recipient by an amount equal to the amount of such payments that were not expended in accordance with Nahasda. So if the overpayment that HUD had made, instead of attempting to get the overpayment back, if HUD had taken the position, we can identify that those overpayments were used by tribe officials going down to the Rio Carnival, and that was not permissible. Would not the recovery of the amount be the same as it's using now? I want to be clear that there's nothing like that here. And I think it could be. If you have a choice whether to say we're going to withhold because we've overpaid, that's what you're doing now. Yes, Your Honor. Or we're going to proceed administratively to have you have withholding in the future because you've spent wrongly, right? Yes. In the second case, there would be jurisdiction, but not in this case. But, yes, I believe that is correct. If it were keyed to, if the basis were improper expenditure. But there weren't, but for HUD to make its case, it's not an element of proof that, you know, the funds came from overpayment, right? It's just any funds received by the tribe for housing purposes were misspent. That is correct. The hypothetical is a sort of case I have never heard of in which the amount overpaid and the amount overspent would be exactly the same, and that's right. These are really intended to be separate things, and in the real world, I think they are separate things. One is a question of mistaken overpayments by the government that should be recovered. And the other is a question of is the tribe complying with NAHAZDA and has it expended funds, regardless of whether they were correctly or incorrectly paid, has it expended any funds in violation of the statute. And those really are separate things. Let me get back to that Senate report you were reading from. Does that say anything about, well, you know, you don't need this remedy because there's another remedy or something like that? No, it doesn't say anything like that. What it says is we know that HUD has been recovering these overpayments, and we want to make, we want to clarify that that process is not, has nothing to do with the substantial noncompliance concept in 4161, doesn't require a hearing. That's what Congress said. Okay. The process. I'm sorry. One more question. Is it the government's position that the proper forum for this kind of case is a district court? Absolutely, Your Honor. And I. Not the court of claims? It. Or maybe either. I don't know about the court of claims. It's certainly not this Court. This Court has limited jurisdiction. It would have to come under 4161, and since 4161 doesn't apply, this Court does not have jurisdiction. And it makes sense when Congress says, with respect to this type of claim, that there's no need for a formalized administrative hearing, as is otherwise, as is required by 4161. It is common for Congress to say, in the context of when there are certain formalized procedures in the administrative realm that look somewhat like district court proceedings, that it makes sense to go straight to a court of appeals, and therefore, we're going to confer jurisdiction, and that's what 4161 is in that mold. We're flattered that something's important enough to come straight to us. And here, with respect, what Congress has clearly said is there's no need for that kind of formalized hearing, and it creates a more common situation in which you simply have administrative proceedings, and those are typically reviewed in the district court, and there's every indication that that's what Congress intended here. You agree that the tribe has complained that there have been actions, not by them, but actions in district court where there's been an argument that there's not jurisdiction. You agree there's jurisdiction someplace. That's correct. And we are not trying to get the tribe out of any judicial remedy at all. And as we've noted, those cases have either remained pending or been completely adjudicated in the district court. It's not like the district courts are rejecting them, as far as I know. And so your argument is, your first argument is there's no jurisdiction here so that we don't reach the second argument, correct, that the appropriate court will reach the second argument in determining, I guess in this case, whether the three-year limitations period applies or has been satisfied. That's what I would envision, that a court with jurisdiction would reach that issue. And you agree that there is a three-year limitations period of some kind. I mean, as I understand your argument, it's not that there's not a limitations period, but that under the circumstances of this case, the actions taken by the agency were such that the limitations period did not run. That is correct. And what happened here, the tribe appears to agree that the letter sent in 2001 was adequate to sort of trigger the statute of limitations and that the agency acted timely, and the crux of their argument, which, again, in our view is an argument that this Court will not reach because it lacks jurisdiction, but the thrust of their argument is that the agency made these misrepresentations to HUD, and because HUD accepted, essentially, those misrepresentations, HUD can no longer do anything about it. And I do want to make one comment, because at the beginning of the argument, opposing counsel did discuss the fact that his client is a poverty-stricken tribe and that these funds are important. I want to make very clear that the outcome of this case substantively is not whether the tribe has the – well, whether Fort Belknap in particular gets these funds versus the United States Treasury. The funds that are recovered when they have been overpaid are redistributed, according to the formula, to all of the tribal recipients. So when you're talking about the equities here, this is not a case of the tribe versus the United States Government. This is a case of Fort Belknap versus all of the other tribes that participate in the NASDA and receive NASDA funds. And when you're talking about the equities, the equitable question is whether the tribe, which now admits that it was never entitled to those funds and that it only received those funds because it made incorrect statements about its own inventory of units, should get the money, as opposed to the host of tribes that are out there, you know, the vast majority of which do correct reporting and comply with all of the requirements of NASDA. And when you think about that as the equities, it is very clear what the answer ought to be. Are there any other questions from the panel? If not, I would simply ask that the petition for review be dismissed for lack of jurisdiction or in the alternative denied. Thank you, Your Honor. Roberts. Thank you. Mr. Bogle. Bogle. Thank you, Your Honor. Just to be clear, regarding the merits of our argument, we do not agree that HUD has done anything to preserve claims that it may have for these funds going back to 1999. The You think that letter was not actioned under the applicable statute of limitations? No. What would have been actioned? A lawsuit? Well, if you look at the record, Your Honor, I believe there's numerous examples of action taken against Fort Bowne. There's at least three examples of that in the record. In 2001, I believe if you look at excerpts of record at pages 75 to 78 and 71, 74. In 2005, if you look at excerpt of record 63, pages 63 to 64, and excerpt of record for 2007 on pages 52 and 54, you see an example of action taken against, in this case, Fort Bowne when HUD chooses to do so. And what was that action, withholding money? Yes. All right. So what you're saying is a letter saying we don't know that you've been accurate, and if you are or have been inaccurate, we want our money back is not action. What they should have done was simply withheld money at that point. No, Your Honor. I'm saying they did both. They made inquiry in 2001, and then they examined it. Is the inquiries action that stops the running of the statute of limitations? I don't believe it fits the CFR provision 319.D, where it says take three years to take action against. They initiated a review of specific years in 2001, and the consequences of that review were completed by a letter saying that they were taking action against the counsel. You agree that the HUD doesn't have to take judicial action in order to pay you less when they've overpaid you, correct? There is per ---- there are provisions in 319.B, for instance. It gives them specific authority to take action and withhold. Without taking judicial filing action, correct? Correct. And we're not suggesting that there had to be. So what you're saying is they didn't have to bring a lawsuit, but the letter demanding the money was not action? No. I'm suggesting that they did that, and then they completed it by saying we're taking this money. And that's action? That definitely is action. It's not action until they take the money. Well, they took action against by withholding the funds, yes. And your argument is they can't revisit it now just because they took that action before? Well, I'm suggesting that the action was complete. They're suggesting, well, they opened the door, and even though their letters say the door was closed by the action they took, they're now saying, no, that door was still open, and we're suggesting that's not correct. I'd like to address one other matter regarding the jurisdiction. What they're basically saying is that these units should not have received funding. And there's the thing is that these units, from the recipient's perspective, the money was received, it was spent on these units. Now they're saying, no, you shouldn't have done that. And we're saying that in the Well, if it was spent on the units and the unit was owned by somebody, he was getting rent money to pay to himself. I understand I'm out of town, but I'm out of time here.   of this case. Many of them had subsequent homebuyers, and we haven't argued the merits of all of that. We've chosen not to get into the merits because it involves things that have been adjudicated generally as how these things are pro and con in other courts. We're just saying it should stop. Thank you. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted. That concludes the argument calendar today, and we're adjourned.
judges: Tashima, Clifton, Bea